**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **MARY H. CARROLL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-cv-345** |
| | ) | **No. 3:08-cv-73** |
| | ) | |
| | ) | **(Consolidated)** |
| | ) | |
| | ) | **(Phillips)** |
| **KNOX COUNTY BOARD OF EDUCATION** | ) | |
| **and ROY E. MULLINS, Superintendent for** | ) | |
| **Knox County Schools,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the following motions:

■   Defendants' Motion for Summary Judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73];

■   Plaintiff's Motion to Consider Affidavit [Doc. 58 in Case No. 3:07-cv-345, Doc. 42 in Case No. 3:08-cv-73];

■   Defendants' Motion to Strike [Doc. 59 in Case No. 3:07-cv-345, Doc. 43 in Case No. 3:08-cv-73]; and

■   Plaintiff's Motion in Limine [Doc. 69 in Case No. 3:07-cv-345, Doc. 52 in Case No. 3:08-cv-73].

For thirty-two years, plaintiff served as Supervisor of Psychological Services for the Knox

County School System.  In June 2007, plaintiff was demoted from that position.  Plaintiff now

challenges her demotion, and has brought the following federal claims: (1) civil rights claims under

1

42 U.S.C. § 1983, alleging that she was deprived of property and liberty interests without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment; (2) a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*., alleging that she was demoted due to her age; (3) claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., alleging that she was demoted for being physically disabled, and that she was not provided reasonable accommodations; and (4) civil rights claims under 42 U.S.C. § 1983, alleging that she was discriminated against in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also filed discrimination claims under Tennessee law, T.C.A. § 8-50-103 and § 4-21-102. Finally, plaintiff alleges that her demotion was arbitrary and capricious in violation of Tennessee law, T.C.A. § 49-5-510.

The following issues are before the Court. First, as for the § 1983 claim based upon a procedural due process [1] violation, was plaintiff deprived of a property interest when she was demoted? That is, did plaintiff have a property interest in her continued employment as Supervisor of Psychological Services for the 2006-2007 school year? If so, is there a genuine issue of material fact regarding whether she was afforded due process before being demoted? In addition, does 42 U.S.C. § 1983 provide the appropriate remedy for the deprivation of such property interest? Furthermore, was plaintiff deprived of a liberty interest without due process of law when she did not receive a "name-clearing" hearing after she was demoted?

---

[1] While both "substantive due process" and "procedural due process" violations may serve as a basis for § 1983 actions, plaintiff only alleges a procedural due process violation. The Sixth Circuit has explained the difference between procedural and substantive due process as follows: "While procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests, substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." Bartell v. Lohiser, 215 F.3d 550, 557-58 (6th Cir. 2000) (internal citations omitted).

Second, as for plaintiffs's discrimination claims brought under ADEA, the ADA, and 42 U.S.C. § 1983, is there a genuine issue of material fact regarding whether plaintiff was demoted due to her age or physical impairments? In particular, has plaintiff shown that there is a genuine issue of material fact regarding each element of the test established in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792 (1973)? As for the ADA claim, has plaintiff shown that she was "disabled" within the meaning of 42 U.S.C. § 12102(2)(A)? Furthermore, assuming that plaintiff has established a prima facie case of discrimination, has the Knox County Board of Education provided a legitimate, non-discriminatory reason? *See* <u>Nance v. Goodyear Tire & Rubber Co.</u>, 527 F.3d 539, 553 (6th Cir. 2008). And if so, has plaintiff shown that there is a genuine issue of material fact regarding whether the reason was pretextual? <u>Id</u>. Finally, as for the ADEA claim, has plaintiff shown that there is a genuine issue of material fact regarding whether age was the "but for" reason for her demotion? *See* <u>Gross v. FBL Fin. Servs., Inc.</u>, 129 S.Ct. 2343, 2351 n.5 (2009).

For the following reasons, defendants' Motion for Summary Judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73] is **GRANTED, whereby plaintiff's federal claims are DISMISSED WITH PREJUDICE, and her state law claims are DISMISSED WITHOUT PREJUDICE**. Having dismissed plaintiff's federal and state claims, the following motions are **DENIED AS MOOT**: plaintiff's Motion to Consider Affidavit [Doc. 58 in Case No. 3:07-cv-345, Doc. 42 in Case No. 3:08-cv-73], defendants' Motion to Strike [Doc. 59 in Case No. 3:07-cv-345, Doc. 43 in Case No. 3:08-cv-73], and plaintiff's Motion in Limine [Doc. 69 in Case No. 3:07-cv-345, Doc. 52 in Case No. 3:08-cv-73].

## I.      INTRODUCTION

For thirty-six years, Dr. Mary Carroll (hereafter, "plaintiff") was employed by the Knox

County Board of Education (hereafter, the "Board"). During thirty-two of those years, she served as Supervisor of Psychological Services- an administrative position within the Psychology Department. In June 2007, plaintiff was demoted from that position for violating Board policy. The following events are what led to that decision.

This controversy began in February 2007, when employees under plaintiff's direct supervision filed complaints against her. The complaints were sent to Dr. Kathy Sims (Executive Director of Human Resources for Knox County Schools) and Dr. Donna Wright (Assistant Superintendent for Instruction and Curriculum of Knox County Schools). After receiving the complaints, Dr. Sims and Dr. Wright contacted Roy Mullins (hereafter, "Superintendent Mullins"), who was the Interim Superintendent of Knox County Schools at the time. An investigation into the matter commenced.

On March 1, 2007, plaintiff met with Superintendent Mullins, Dr. Sims, and Dr. Wright to discuss the allegations. Plaintiff was informed that complaints had been filed against her. Following the meeting, plaintiff was placed on administrative leave with pay.

On March 7, 2007, the Human Resources Department began interviewing employees in the Psychology Department. Over thirty employees were interviewed- all of whom worked under plaintiff's direct supervision. Plaintiff alleges that Human Resources did not interview all the employees under plaintiff's supervision.

The purpose of the investigation was to determine whether plaintiff created a hostile work environment. The interview responses were summarized and presented to Superintendent Mullins, who did not receive a copy of the actual interviews. Based upon this summary, Superintendent Mullins learned that many employees made negative comments about plaintiff.

On April 19, 2007, Superintendent Mullins met with plaintiff to discuss the investigation. Superintendent Mullins informed plaintiff that the majority of the comments were negative. As Superintendent Mullins stated, "I wanted her to be aware that it was not just one or two people that had lodge[d] complaints against her leadership style. It was a much more expansive group of people that she supervised." [Doc. 51 at 28 in Case No. 3:07-cv-345, Plaintiff's Response to Defendants' Motion for Summary Judgment]. Superintendent Mullins did not provide a written summary of the comments.

On May 3, 2007, plaintiff met school administrators to discuss the investigation. Plaintiff was provided with a copy of the redacted [2] comments at this time. The purpose of the meeting was "to share with Dr. Carroll the investigatory notes and to give her an opportunity to tell her side of the story with regard to the findings." [Doc. 41 at 15 in Case No. 3:07-cv-345, Defendants' Memorandum in Support of their Motion for Summary Judgment ]. Plaintiff argues that she could not defend herself because she was not told what Board policy she was charged with violating. At the conclusion of the meeting, plaintiff was told that she could submit a written response to the allegations. Plaintiff was confused as to when she had to submit her response.

On June 4, 2007, plaintiff met with Superintendent Mullins, Dr. Sims, Dr. Wright, and legal counsel for the school system. Plaintiff's former attorney was also present. A Conference of Concern (which is a formal reprimand) was prepared for the meeting, and charged plaintiff with

---

[2] Defendants allege that they provided redacted statements out of fear that plaintiff would retaliate against employees. [Doc. 41 at 16 in Case No. 3:07-cv-345, Defendants' Memorandum in Support of their Motion for Summary Judgment ]. Plaintiff alleges that because the statements were redacted, she could not defend herself: "Without knowing the source of the complain t she [the plaintiff] could not respond, since she did not know the context or any prior history regarding the person making the complaint which might be a motivating factor for the person making the complaint." [Doc. 51 at 32 in Case No. 3:07-cv-345, Plaintiff's Response to Defendants' Motion for Summary Judgment].

violating Board policies CD ("Lines of Authority and Staff Relations") and GAE ("Complaints and Grievances"). Defendants argue that plaintiff was provided an opportunity to defend herself at this meeting:

> **Ms. Crabtree**: Were you given the opportunity to say anything on June 4th?
>
> **Dr. Carroll**: Nobody asked me anything.
>
> **Q.** But you were given the opportunity to say something, if you wanted to?
>
> **A.** Well, nobody said that. It didn't feel like it was a, tell us what you think or - it was just everybody sort of sat there after I read the conference of concern.
>
> . . . . . . . . .
>
> **Ms. Crabtree**: Did you have a chance to review those redacted statements between May 3rd and June 4th?
>
> **Dr. Carroll**: Yes.
>
> **Q**: Did you come prepared to discuss any of those at the meeting on June 4th?
>
> **A**: I really didn't know that I should come prepared to do that, and it was very hard, without knowing who said what.

[Doc. 41 at 18-19 in Case No. 3:07-cv-345, Defendants' Memorandum in Support of their Motion for Summary Judgment, quoting plaintiff's deposition testimony concerning the June 4, 2007 meeting]. Plaintiff did not defend herself at this meeting.

On June 22, 2007, plaintiff was reassigned to the position of school psychologist. Plaintiff was sixty years old when she was demoted. Superintendent Mullins states that plaintiff was demoted for the following reasons:

> My interpretation of the violation is there was not a cooperative supervisory relationship, because the employees expressed concerns about being able to go to ask Mary questions, about being able to go to Mary, and they felt like they did and tried

to create a cooperative relationship and question anything, they were intimidated. They were bullied. They felt like they couldn't establish a cooperative relationship for fear of retaliation, verbal or whatever.

[Doc. 41 at 20 in Case No. 3:07-cv-345, Defendants' Memorandum in Support of their Motion for Summary Judgment, quoting Superintendent Mullins's deposition testimony]. Even though plaintiff was demoted from her supervisory position, her salary remained mostly the same for the 2007-2008 school year. During the 2008-2009 school year, plaintiff's salary was reduced to that of a school psychologist.

On September 10, 2007, plaintiff filed suit under federal and state law, seeking a declaratory judgment that her demotion be set aside, that she be reinstated to her position as Supervisor of Psychological Services, and that she receive other equitable relief. [Doc. 1 in Case No. 3:07-cv-345, Plaintiff's Complaint]. Plaintiff also sought compensatory damages. [Id.]. Defendants have moved for summary judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73]. Plaintiff has responded [Doc. 51 in Case No. 3:07-cv-345, Doc. 35 in Case No. 3:08-cv-73] and defendants have replied [Doc. 53 in Case No. 3:07-cv-345, Doc. 37 in Case No. 3:08-cv-73].

## II.     STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zendith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); *see also, e.g.* Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 397 (6th Cir. 2007) ("The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party."). With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the existence of genuine issues of material fact. Id. at 324. The non-moving party demonstrates the existence of genuine issues of material fact by "going beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file . . .'" Id. If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment.

## III.    ANALYSIS

### A.    Plaintiff's Section 1983 Claims Based Upon the Deprivation of Property and Liberty Interests Without Due Process of Law

#### 1.    Defining the Parties: Plaintiff Has Sued a Local Government Unit and Local Government Official in His Personal and Official Capacity

##### a.    Introduction

To state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate "(1) that [the] defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under federal law." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). As a basis for her § 1983 action, plaintiff alleges that: (1) she was deprived of a property interest (her continued employment as Supervisor of Psychological Services for the 2006-2007 school year)

without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment; and (2) she was deprived of a liberty interest without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment.

In § 1983 actions, the first question a court must ask is: who did plaintiff sue, and in what capacity? Ordinarily, this is an important question because it determines what the plaintiff must prove, and what defenses are available. However, in this case the status of the defendants is irrelevant. As will be explained later, plaintiff's § 1983 claim based upon the deprivation of a property interest is dismissed because that statute does not provide the appropriate remedy. *See* Part III.A(2)(b). Plaintiff's §1983 claim based upon the deprivation of a liberty interest is dismissed because plaintiff waived her right by failing to request a "name-clearing" hearing, and in any event, plaintiff was not charged with immoral or dishonest behavior. *See* Part III.A(3). Thus, plaintiff's § 1983 claims based upon the deprivation of property and liberty interests are dismissed regardless of who plaintiff sued, or in what capacity.

Despite the foregoing, it is still helpful to remember who plaintiff is suing. Plaintiff has not sued the "State" or state officials.[3] Rather, plaintiff has sued the Knox County Board of Education, a local government unit.[4] Plaintiff has also sued former Superintendent Roy Mullins, a local

---

[3] In Monell v. Department of Social Services of New York, the Supreme Court recognized that local government units (and local government officers and officials) may be sued under § 1983, and that they are not part of the "State" for purposes of § 1983 liability. 436 U.S. 658, 691 (1978). The Supreme Court established separate tests for holding local government units liable under § 1983. Id. at 694-95. "We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a *government's policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694 (emphasis added).

[4] *See* Doe v. Claiborne County, 103 F.3d 495, 508 (6th Cir. 1996) (recognizing that school boards are local government units). The Court uses the terms "municipal" and "local government unit"

government official. The Court will address the claim against Superintendent Mullins first.

### b. Superintendent Roy Mullins

Like state officials, local government officials may be sued in their "official" capacity, "personal" capacity, or both. Plaintiffs have different burdens of proof dependent upon the capacity.[5] Defendants may also raise different defenses.[6] In this case, plaintiff did not expressly

interchangeably for purposes of assessing the Board's liability under § 1983.

[5] In Monell v. Department of Social Services of New York, the Supreme Court stated that when local government officials are sued in their official capacity, it should be treated as suits against the local government unit: "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . our holding today that local government can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name." 436 U.S. 658, 691 n.55 (1978). As the Supreme Court explained in Kentucky v. Graham, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." 473 U.S. 159, 166 (1985) (citations omitted).

Section 1983 claims for monetary damages against local government officials sued in their official capacity are "*treated as claims against the municipality* and therefore require actions in accordance with an unconstitutional municipal policy." Peach v. Smith County, 93 Fed.Appx. 688, 692 (6th Cir. Feb. 17, 2004) (emphasis added).

In contrast, when a plaintiff brings a §1983 claim for monetary damages against a government official in their personal capacity, the plaintiff does not have to show that there was a policy or custom that played a part in the violation of federal law. *See* Kentucky v. Graham, 473 U.S. 159, 166 (1985).

[6] Municipal (or local government) officers are "insulated by the 'qualified' or 'good faith' immunity doctrine from exposure to 'individual capacity' lawsuits anchored in a discretionary official decision if 'their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known,' even if their actions actually violated the plaintiff's federal rights." Von Herbert v. City of St. Clair Shores, 61 Fed.Appx. 133, 141 (6th Cir. Mar. 11, 2003) (internal citations omitted). The "qualified immunity" defense is not available in official-capacity suits, which are treated as suits against the entity for which the individual works. Id. The "qualified immunity" defense exonerates individual-capacity defendants from liability for their discretionary judgments. Sheets v. Mullins, 287 F.3d 581, 686 (6th Cir. 2002). The defendant must initially raise the defense, which Superintendent Mullins did in his answer. [Doc. 2 at 4 in Case No. 3:07-cv-345, Defendants' Answer]. Once the defense is raised, the "ultimate burden of proof is on the plaintiff to show that the defendants are

state whether she sued Superintendent Mullins in his official [7] or personal capacity. After reviewing the pleadings and applying the "course of proceedings" test, the Court finds that plaintiff sued Superintendent Mullins in both his official and personal capacity.[8] However, because this finding

---

not entitled to qualified immunity." Rich v. City of Mayfield Hts., 955 F.2d 1092, 1095 (6th Cir. 1992) (citations omitted).

[7] Again, the Court notes that a suit against a local government official in his official capacity is treated as a suit against the local government unit. *See* Monell v. Dept. of Soc. Servs, 436 U.S. 658, 691 n.55 (1978). As the Supreme Court explained in Kentucky v. Graham, there "is no longer a need to bring official-capacity actions against local government officials . . . [because] local government units can be sued directly for damages and injunctive or declaratory relief." 473 U.S. 159, 167 n.14 (1985).

[8] When a complaint is silent on whether a government official is sued in his official or personal capacity, courts apply a "course of proceedings" test. Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001). The point is to determine whether the defendant has "fair notice of what the claim is and the grounds upon which it rests." Brooks v. American Broad. Cos., 932 F.3d 495, 497 (6th Cir. 1991) (citations omitted). In applying the test, courts examine later pleadings, "such as a response to a motion for summary judgment, to determine whether proper notice had been given." Moore, 272 F.3d at 772 (citations omitted). The "course of proceedings" test considers factors such as "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." Id. at n.1.

The caption on plaintiff's complaint refers to Roy Mullins in his official title as "Superintendent for Knox County Schools." [Doc. 1 at 1 in Case No. 3:07-cv-345, Plaintiff's Complaint]. In addition, in her Response to the Motion for Summary Judgment [Doc. 51 in Case No. 3:07-cv-345], plaintiff does not refer to Roy Mullins as an "individual defendant" or "Roy Mullins individually." Rather, plaintiff refers to the Board and Roy Mullins as "defendants" collectively in discussing the § 1983 action. [Id. at 60]. The failure to distinguish between the Board and Mullins indicates that plaintiff did not intend to sue Mullins in his personal capacity.

However, there are facts that suggest plaintiff intended to sue Superintendent Mullins in his personal capacity. First, Mullins raised the defense of qualified immunity in his answer [Doc. 2 at 4 in Case No. 3:07-cv-345, stating that "[i]t is affirmatively maintained that Defendant Mullins is entitled to any and all qualified good faith immunity as to any federal claims."]. In Lindsay v. Bogle, the Sixth Circuit recognized that the assertion of a qualified-immunity defense indicated that the defendants were aware that they were being sued in their personal capacity. 92 Fed.Appx. 165, 169 (6th Cir. Feb. 3, 2004) (explaining that "[b]ecause qualified immunity is available only in a personal capacity suit . . . the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally.") (citations omitted). Second, plaintiff has requested monetary damages. In Shepherd v. Wellman, the Sixth Circuit recognized that the request for monetary damages "is one factor that might place an individual on notice that he is being sued in his individual [or personal] capacity . . ." 313 F.3d 963, 969 (6th Cir. 2002).

has no impact on the outcome of the § 1983 action, the Court will not address whether Superintendent Mullins is protected by the qualified-immunity defense.

### c. Knox County Board of Education

As mentioned previously, the Board is a local government unit for purposes of § 1983 liability. Because the Board is not part of the State, it is not protected by the Eleventh Amendment.[9] Unlike the State, local government units may be sued directly for monetary damages.[10] Plaintiff has sued the Board for monetary damages and injunctive relief.

In deciding whether a school board may be held liable under § 1983, courts apply a two-pronged test: "(1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the County and/or the School Board is responsible for that violation." Doe v. Claiborne County, 103 F.3d 495, 505-06 (6th Cir. 1996) (citations omitted). The first question is answered by "examining the nature of the right claimed to have been infringed upon . . ." Id. at 506. In this case, plaintiff argues that she was deprived of property and liberty interests without due process of law.

---

In sum, the Court finds that the combination of plaintiff's request for monetary damages, along with the fact that Roy Mullins raised a qualified immunity defense, provides sufficient notice that Roy Mullins was sued in his personal capacity. However, this finding does not affect the outcome of this case because the § 1983 claims based upon the deprivation of property and liberty interests are dismissed on grounds entirely independent from this analysis. *See* Part III.A(2)(b).

[9] In Monell v. Department of Social Services of New York, the Supreme Court held that local government units are not necessarily protected by the Eleventh Amendment: "There is certainly no constitutional impediment to municipal liability . . . Nor is there any basis for concluding that the Eleventh Amendment is a bar to municipal liability. Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes. 436 U.S. 658, 691 n.54 (1978) (internal citations omitted).

[10] *See* Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell . . . local government units can be sued directly for damages and injunctive or declaratory relief.").

To answer the second question, plaintiffs "must show that the School Board itself is the wrongdoer." Id. at 507. Typically, this means that the School Board "cannot be found liable unless the plaintiff can establish that an *officially executed policy*, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." Id. (emphasis added) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). Thus, plaintiffs must show that the injury was caused by an unconstitutional custom or policy. *See* Claiborne County, 103 F.3d 495, 508 (6th Cir. 1996) ("In addition to showing that the School Board as an entity 'caused' the constitutional violation, plaintiff must also show a direct causal link between the custom and the constitutional deprivation. . . ."). This is why courts look "not to the high school or any particular administrator- but rather, to the policy as articulated by the Board." Morrison v. Bd. of Educ. of Boyd County, 521 F.3d 602, 609 n.6 (6th Cir. 2008). Thus, when a plaintiff brings a § 1983 claim against a local government unit, courts have to decide whether the injury was caused by a policy or custom. Claiborne County, 103 F.3d at 505-06.

Despite this general rule, the Sixth Circuit carved out an exception in Sharp v. Lindsey, 285 F.3d 479, 488-89 (6th Cir. 2002). The effect of that case is the following: anytime a demoted teacher brings a § 1983 claim based upon the deprivation of a property interest (her continued employment in a non-tenured supervisory position), and that teacher's employment in the non-tenured position was created by a contract (rather than state law), the court does not have to address whether the injury was caused by Board policy or custom. *See* Id. at 489. The reason is simple: regardless of whether the demotion constitutes policy or custom, the § 1983 action will be dismissed.

Like the present case, the plaintiff in Sharp filed a § 1983 claim against the local school

board and superintendent.  Id.  Also like the present case, the plaintiff alleged that he had a property interest in his supervisory position (he was a principal), and that he was demoted- that is, deprived of a property interest- without due process of law.  Id.  Thus, the plaintiff's § 1983 action was based upon a procedural due process violation.  Id.

In addressing the § 1983 claim, the court did not decide whether the demotion was a result of municipal policy or custom.  Id.  Instead, the court addressed whether the plaintiff was deprived of a property interest without due process of law.  Id. at 487.  The court found that the plaintiff had a property interest in his continued employment as principal, and that the interest was created by a contract.  Id.  However, the Sixth Circuit affirmed the district court's dismissal of the § 1983 claim, finding that the statute did not provide an appropriate remedy.  Id. at 488-89.

Based upon Sharp, it is clear that when a teacher has been demoted from a supervisory position (such as the principal in Sharp, or a Supervisor of Psychological Services as in the present case), and the teacher had a fixed-term interest in the supervisory position which was created by contract, § 1983 does not provide the appropriate remedy for the deprivation (i.e. the demotion from the supervisory position) of such interest.  See Id. at 489.  Thus, in cases similar to Sharp, courts are not required to address whether the demotion was a result of policy or custom.  Because this case is governed by Sharp, the Court will not address whether plaintiff's demotion was the result of municipal policy or custom.  Such finding has no bearing on the outcome.  See Part III.A(2)(b).

Having identified the status of the defendants, the Court will now address plaintiff's two claims supporting her § 1983 action: (1) the deprivation of a property interest (continued employment in her position as Supervisor of Psychological Services for the 2006-2007 school year) without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment;

and (2) the deprivation of a liberty interest without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment.  The Court will address the deprivation of property interest claim first.

> **2.     Procedural Due Process Claim 1: Deprivation of Property Interest Without Due Process of Law**

>> **a.     Plaintiff Had a Property Interest in Her Position as Supervisor of Psychological Services Until the End of Her Employment Contract**

As a basis for her § 1983 claim, plaintiff argues that her Due Process rights under the Fourteenth Amendment were violated.  The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV § 1.  To prevail on a procedural due process claim, the plaintiff must show (1) that she was deprived of a property or liberty interest; and (2) that the deprivation occurred without due process of law.  *See* Zinermon v. Burch, 494 U.S. 113, 125 (1990).

The first issue to decide is the following: did plaintiff have a property interest in her position as Supervisor of Psychological Services for the 2006-2007 school year?  As the Supreme Court has explained, property interests "are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an *independent source such as state law*- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) (emphasis added).  While the Due Process Clause dictates what process is due before a right may be deprived, the actual property interest is created by independent sources.  *See* Id.  The two most common sources are state law and contracts.  *See Id*.  To establish a protected interest in her position as Supervisor of Psychological Services, plaintiff "must be able to point to some statutory or contractual right

conferred by the state which supports a legitimate claim to continued employment." Bailey v. Floyd County Bd. of Educ., 106 F.3d 135, 141 (6th Cir. 1997).

As a preliminary matter, the Court notes that plaintiff was employed in two capacities. First, plaintiff had tenure in her "teaching" capacity as a school psychologist. Plaintiff's employment as a school psychologist was separate from her employment as Supervisor of Psychological Services. Plaintiff's property interest in her "teaching" position was created by Tennessee law. *See* T.C.A. § 49-5-409 (listing the procedures by which public elementary and high school teachers receive tenure). Plaintiff continued to serve in this capacity after she was demoted from her supervisory position.

Second, plaintiff served as Supervisor of Psychological Services. In contrast to her "teaching" position, plaintiff did not have tenure in her supervisory position. It was a contract, not state law, that created plaintiff's interest in her position as Supervisor of Psychological Services. Tennessee law makes clear that teachers are not provided tenure in supervisory positions. *See* T.C.A. § 4-5-501(11)(A) ("Administrative and supervisory personnel shall have tenure as teachers *and not necessarily tenure in the specific type of position in which they may be employed*.") (emphasis added). In Warren v. Polk County Board of Education, the Tennessee Supreme Court recognized that tenure could be acquired in "teaching" positions, but not supervisory positions: "The position of athletic director and coach is an assignment that falls within the same category as principal and other administrative and supervisory assignments. *Tenure cannot be acquired in that status*, and there is no requirement of formal charges and a hearing prior to relieving a tenured teacher of that assignment." 613 S.W. 2d 222 (Tenn. 1981) (emphasis added). The Sixth Circuit has also recognized that the "Tennessee legislature did not intend that a principal [or other

supervisor] should have a statutory entitlement to the his principalship [or other supervisory position]." Sharp, 285 F.3d at 487 (citations omitted). In McKenna v. Sumner County Board of Education, the Tennessee Supreme Court made clear that teachers do not have tenure in their supervisory positions:

> The statutes and case law, however, do not bear out his contention that he held tenure as a principal. It has been repeatedly held by the courts of this state that, while principals and other administrative personnel are covered by the Teachers' Tenure Act, they have tenure only as teachers and not in any particular job assignment. The statute itself is clear on this subject, stating: 'Administrative and supervisory personnel shall have tenure as teachers and not necessarily tenure in the specific type of position in which they may be employed.'

574 S.W. 2d 527, 529 (Tenn. 1978) (citing T.C.A. § 49-1401(4)).

In Sharp v. Lindsey, the Sixth Circuit recognized that a principal had a property interest in his supervisory position as a result of an employment contract. 285 F.3d 479, 487 (6th Cir. 2002) (finding that "Mr. Sharp [the principal] had a protected property interest in his position as principal by reason of his principal employment contract. The contours of that interest depend, of course, on the terms of the contract."). In Kendall v. Board of Education, the Sixth Circuit recognized that a non-tenured teacher had a property interest in her one-year employment contract. 627 F.2d 1, 4 (6th Cir. 1980) (*impliedly overruled on other grounds*) (finding that the "contract did create a legitimate expectation of entitlement, and she could only be dismissed for causes stated in the contract. Therefore, the mid-term termination of her contract must be accompanied by due process.").

In the present case, plaintiff had a property interest in serving as Supervisor of Psychological Services. This property interest was created by a fixed-term employment contract, not Tennessee law. Under the contract, plaintiff was to serve as Supervisor of Psychological Services during the 2006-2007 school year and receive $98,875.00 as salary. Based upon the foregoing, the Court finds

that plaintiff had a property interest in her position as Supervisor of Psychological Services for the 2006-2007 school year.

> ### b. Even Though Plaintiff Had a Property Interest in Her Position as Supervisor of Psychological Services, Section 1983 Does Not Provide the Appropriate Remedy

When a plaintiff brings a § 1983 action based upon a procedural due process claim, and the court finds that the plaintiff had a protected property interest, the court must decide whether plaintiff was deprived of that interest without due process of law. *See* Loudermill, 470 U.S. at 538. However, there is an exception to this rule: if a court finds that § 1983 does not provide the appropriate remedy, then the court does not have to address whether plaintiff received due process. *See* Sharp v. Lindsey, 285 F.3d 479 (6th Cir. 2002) (finding that the plaintiff had a property interest in continued employment, but declining to decide whether plaintiff received due process because Section 1983 did not provide an appropriate remedy). Although plaintiff was deprived of property interest, the Court finds that § 1983 does not provide the appropriate remedy. The following cases are instructive.

In Sharp, a plaintiff filed a § 1983 claim after he was demoted from being a school principal. 285 F.3d 479 (6th Cir. 2002). Pursuant to Tennessee law, the plaintiff had tenure in his "teaching" capacity, but not in his supervisory position. Id. at 482. His property interest in serving as principal was created solely by contract. Id. The contract was subject to unilateral termination by the superintendent for "inadequate performance" and specified that the term of employment would last from July 26, 1999 until June 7, 2000. Id. On August 19, 1999, the plaintiff was placed on administrative leave with pay. Id. A few weeks later, the plaintiff was removed as principal and reassigned to serving as a math tutor with the same salary. Id.

18

The plaintiff filed suit under § 1983, arguing that his Due Process rights under the Fourteenth Amendment were violated.  Id.  The plaintiff argued that he was deprived of a property interest- his continued employment as a principal- without due process of law.  Id.  Despite finding that the plaintiff had a property interest, the Sixth Circuit affirmed dismissal of the § 1983 claim.  Id. at 488.  In particular, the court held that § 1983 did not provide the appropriate remedy for the deprivation of such interest.  Id.  Instead, the court held that a breach of contract action under state law provided the appropriate remedy.  Id.  The court based its reasoning on Ramsey v. Board of Education, 844 F.2d 1268 (6th Cir. 1988).

In Ramsey, the Sixth Circuit established the rule that "[w]hen a person is hired for a fixed period of time . . . and that person is dismissed prematurely, no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract."  844 F.2d at 1273.  In other words, when a non-tenured employee has a property interest in continued employment, and that person is removed prematurely from the non-tenured position, § 1983 does not provide the appropriate remedy if the property interest was created solely by contract.  See Id.  In Ramsey, the court held that even though the plaintiff had a property interest [11] in her accumulated sick leave days, Section 1983 was "an inappropriate vehicle to redress what is merely a breach of contract claim by Ramsey against the Board."  Id. at 1274.  Section 1983 did not provide the

_____

[11]  The Court notes that the plaintiff in Ramsey v. Board of Education did not have a property interest created by a written contract.  844 F.2d 1268, 1272 (6th Cir. 1988).  Rather, a state statute and school board policy created the property interest (compensation for a number of unused sick-leave days).  Id. (recognizing that "Ramsey's claim to her accumulated sick leave days *is not based on her written employment contract* with the Board . . .") (emphasis added).  Having found that plaintiff's property interest was not created by a written contract, the Sixth Circuit proceeded to address the relationship between property interests created by contracts and § 1983 actions, and adopted Ramsey's analysis in Sharp v. Lindsey, when it held that § 1983 did not provide the appropriate remedy for the deprivation of a property interest in a fixed-term position created solely by contract.  285 F.3d 479, 488-89 (6th Cir. 2002).

appropriate remedy because:

> [A] nontenured employee's property interest in continued employment is created and defined by the employee's contract. The employee has a property interest in employment for the duration of the employment contract, but the deprivation of that finite interest can be compensated adequately by an ordinary breach of contract action.

Id.

Like the principal in Sharp, plaintiff had a fixed-term interest in her supervisory position. Under the contract, plaintiff was to serve as Supervisor of Psychological Services for the 2006-2007 school year and receive a salary of $98,875.00. This case is governed by Ramsey and Sharp because plaintiff had a fixed-term property interest created solely by contract. In both Ramsey and Sharp, the Sixth Circuit emphasized the fixed-term nature of the contracts: "Like an employee hired for a determinate period of time, an employee deprived of a property interest in a specific benefit, term, or condition of employment, suffers a lost which is defined easily . . . and therefore, any interference with that interest is redressed adequately in a state breach of contract action." Ramsey, 844 F.2d at 1274. Again, the court emphasized the fixed-term interest created by the contract: "When a person is hired for a *fixed period of time* . . . and that person is dismissed prematurely, no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract." Id. at 1273. In Ramsey, the court distinguished between tenured employees and non-tenured employees with fixed-term contracts. 844 F.2d at 1273-74. Unlike non-tenured employees, the "tenured employee who loses his or her position by a premature breach of contract has suffered the loss of a property interest that, because of its special nature, is neither easily defined nor easily compensated by a typical breach of contract action." Id. (citations omitted). In Sharp, the court noted, "[g]iven the *fixed term of the contract*, it is plain under Ramsey that Mr. Sharp had no due

process right to notice and a hearing before his reassignment . . . Tennessee [law] provides a perfectly adequate procedure for determining whether a breach has occurred and for granting redress if it did." 285 F.3d at 489.

The rule from these cases is clear: when a teacher is demoted from a supervisory position, and that teacher has a fixed-term interest in the supervisory position created solely by contract, Section 1983 does not provide an appropriate remedy for the deprivation of such property interest. *See* Sharp, 285 F.3d at 488-89. Rather, the appropriate remedy is to file a breach of contract claim under state law. Id. ("We see no justification for turning Mr. Sharp's ordinary breach of contract action into a federal constitutional case."). In the present case, plaintiff had a fixed-term property interest in a supervisory position that was "created and defined [solely] by the employee's contract." Ramsey, 844 F.2d at 1274. Plaintiff signed an employment contract, effective July 1, 2006 for a period of 255 work days. Because plaintiff was prematurely removed from the fixed-term position, the appropriate remedy is to file a breach of contract action under state law. *See* Sharp, 285 F.3d at 489. As the Sixth Circuit held in Sharp, "[g]iven the fixed term of the contract, it is plain under Ramsey that Mr. Sharp had no due process right to notice and a hearing before his reassignment- at no loss of pay- to a teaching position. The reassignment may have breached the contract, but Tennessee provides a perfectly adequate procedure for determining whether a breach has occurred and for granting redress if it did." 285 F.3d at 489.

There is a caveat to this rule, however. In both Ramsey and Sharp, the Sixth Circuit suggested that if a plaintiff's livelihood is jeopardized by a premature dismissal, then the plaintiff may bring a § 1983 action even though (1) the plaintiff's property interest was created solely by

contract; and (2) the property interest was in a fixed-term position.[12]  During the 2007-2008 school year, plaintiff earned the same salary that she had received in previous years (despite the fact that she was no longer a supervisor).  During the 2008-2009 school year, plaintiff's salary was reduced to the normal pay for school psychologists.  Despite the reduction in salary, it does not appear that plaintiff's livelihood was jeopardized by her demotion.

Accordingly, defendants' Motion for Summary Judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73] is **GRANTED**, to the extent that plaintiff's § 1983 claim based upon a deprivation of property interest without due process of law is **DISMISSED WITH PREJUDICE**.

> ### 3. Procedural Due Process Claim 2: Deprivation of Liberty Interest Without Due Process of Law

> #### a. Plaintiff Waived Her Liberty Interest Claim When She Failed to Request a "Name-Clearing" Hearing

As the Sixth Circuit has recognized, a "persons's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." Quinn v. Shirley, 293 F.3d 315, 319 (6th Cir. 2002), *cert denied*, 537 U.S. 1019 (2002) (quoting Chillingirian v. Boris, 882 F.3d 200, 205 (6th Cir. 1989)).  When a "nontenured employee shows

---

[12]  In Ramsey v. Board of Education, the Sixth Circuit stated: "The Supreme Court has held repeatedly that the property interest in a person's means of livelihood is one of the most significant that an individual can possess. . . . Accordingly, because public employment contracts may involve a person's livelihood, due process usually requires that a public employee be provided with some kind of a predeprivation procedure before that employee may be fired."  844 F.2d 1268, 1273 (6th Cir. 1988) (citations omitted).  However, the court later retreated from this statement: "However, even when a person's means of livelihood is connected to the deprivation claim, due process does not always require a predeprivation hearing or support a section 1983 action when any interest in employment is affected. When a person is hired for a fixed period of time . . . and that person is dismissed prematurely, no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract."  Id. (citations omitted).

that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." Chillingirian, 882 F.2d at 205. The purpose of the hearing is to give the injured employee an opportunity to clear her name. *See* Codd v. Velger, 429 U.S. 624, 627-28 (1977).

To survive a motion for summary judgment, plaintiff must show that there is a genuine issue of material fact regarding each of the following elements:

(1)    The stigmatizing statements must be made in connection with the plaintiff's termination from employment.

(2)    A plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance . . .

(3)    The stigmatizing statements must be made public.

(4)    The plaintiff must claim that the charges made against him were false.

(5)    The public dissemination must have been voluntary.

Quinn, 293 F.3d at 320 (citations omitted). Recently, the Sixth Circuit added another requirement: a plaintiff must request a "name-clearing" hearing from her employer. Id. at 322. This request must be made after the plaintiff has been demoted or fired. Id. at 320. In Quinn, the Sixth Circuit held that a plaintiff's failure to request a name-clearing hearing waived a § 1983 action based upon the deprivation of a liberty interest without due process of law. Id at 332. (holding that a plaintiff "is required to show that he requested a name-clearing hearing and was denied that hearing.") (citations omitted). In other words, "a plaintiff's failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." Id. This is because "[i]t is the *denial of the name-clearing hearing* that causes the deprivation of the liberty interest without due process." Id. at 320 (emphasis added).

There is no evidence that plaintiff requested a name-clearing hearing *after* she was demoted. Plaintiff may have requested an opportunity to refute the charges prior to her demotion [13], but that does not implicate a liberty interest. Rather, "[i]n order to succeed on his liberty interest claim, [plaintiff] must also prove that [defendant] improperly refused to grant him a *post-removal* opportunity to refute the false charges that led to his removal . . ." Quinn, 293 F.3d at 320 (quoting Baden v. Koch, 799 F.3d 825, 830 (2d Cir. 1986)). Thus, an employee's liberty interest in a name-clearing hearing is implicated only after he is terminated. *See* Quinn, 293 F.3d at 320. There is no evidence that plaintiff requested a name-clearing hearing after she was demoted. Because plaintiff has not shown that she requested a name-clearing hearing post-removal, she waived her § 1983 claim based upon the deprivation of a liberty interest without due process of law.

> **b.** **Even If Plaintiff Requested a "Name-Clearing" Hearing, Her Liberty Interest Claim Fails Because She Was Not Accused of Being Dishonest or Immoral, and Plaintiff Has Not Shown That Her Demotion Had a Significant Effect On Other Employment Opportunities**

Assuming, *arguendo*, that plaintiff requested a name-clearing hearing, her liberty interest claim would still fail. As the Sixth Circuit has explained, a plaintiff "is not deprived of his liberty interest when the employer has alleged *merely improper or inadequate performance*, incompetence, neglect of duty or malfeasance." Quinn, 293 F.3d at 320 (emphasis added) (citations omitted). In Roth v. Board of Regents, the Supreme Court rejected a liberty interest claim because the employer did not base non-renewal of an employee's contract "on a charge, for example, that he [the employee] had been guilty of *dishonesty, or immorality*." 408 U.S. at 573 (emphasis added).

---

[13] In her Response to the Motion for Summary Judgment [Doc. 51 at 62 in Case No. 3:07-cv-345], plaintiff alleges that prior to her demotion she was "not given an opportunity to address allegations against her." In sum, plaintiff alleges that she was "never afforded an opportunity to defend herself *before* her demotion occurred." [Id. at 63] [emphasis added].

Plaintiff was not demoted for being dishonest or immoral. Plaintiff was charged with violating Board Policies CD ("Lines of Authority") and GAE ("Complaints and Grievances"). As Superintendent Mullins stated, plaintiff violated these policies because:

> . . . there was not a cooperative supervisory relationship, because the employees expressed concerns about being able to go to ask Mary questions, about being able to go to Mary, and they felt like if they did and tried to create a cooperate relationship and question anything, they were intimidated. They were bullied. They felt like they couldn't establish a cooperative relationship for fear of retaliation, verbal or whatever.

[Doc. 41 at 20 in Case No. 3:07-cv-345, Defendants' Memorandum in Support of their Motion for Summary Judgment, excerpt from Superintendent Mullins's Deposition]. Plaintiff was not charged with engaging in immoral or dishonest behavior. Plaintiff was demoted for inadequate job performance. As the Sixth Circuit has stated, one "is not deprived of his liberty interest when the employer has alleged *merely improper or inadequate performance . . .*" Quinn, 293 F.3d at 320 (emphasis added).

In addition, plaintiff has failed to demonstrate that a "range of opportunities is no longer open" due to her demotion. *See* Garvie v. Jackson, 845 F.2d 647, 652 (6th Cir. 1988) (finding no due process violation where plaintiff made no showing that a "definite range of [employment] opportunities is no longer open"). Accordingly, defendants' Motion for Summary Judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73] is **GRANTED**, to the extent that plaintiff's § 1983 claim based upon a deprivation of liberty interest without due process of law is **DISMISSED WITH PREJUDICE**.

> **B.**      **Plaintiff's Claim Under the Age Discrimination in Employment Act**

> **1.**      **Introduction**

Plaintiff, who was sixty years old at the time she was demoted, has filed a claim under the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. The ADEA "prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age." Johnson v. Franklin Farmers Co-op, 2010 WL 1994853, at *2 (6th Cir. May 19, 2010) (citing 29 U.S.C. § 623(a)(1)). To survive a motion for summary judgment, plaintiff must prove that there is a genuine issue of material fact regarding whether age was the "but for" cause of her demotion. *See* Gross v. FBL Fin. Services, Inc., 129 S.Ct. 2343, 2351 n.5 (2009). Plaintiff may prove discrimination by direct or circumstantial evidence. *See* Geiger v. Tower Automotive, 579 F.3d 614, 620 (6th Cir. 2009).

Only the Board qualifies as an "employer" for purposes of the ADEA. *See* Wathen v. Gen. Elec. Co., 115 F.3d 400, 404 n.6 (6th Cir. 1997) (recognizing that "Title VII, the ADEA, and the ADA define 'employer' essentially the same way", and holding that individual supervisors may not be held personally liable under Title VII). Accordingly, plaintiff's ADEA claim against Superintendent Mullins in his personal capacity is **DISMISSED WITH PREJUDICE**. The Court now determines whether the Board may be held liable.

## 2. Plaintiff Has Not Provided Direct Evidence of Age Discrimination

In support of her ADEA claim, plaintiff alleges the following:

> Plaintiff Carroll was 60 years old at the time she was demoted she was within the protected age class. The Defendant Knox County Board of Education has had a trend of transferring or demoting older administrators. Former Superintendent Charles Lindsey commented at a meeting that it was good to see so many young teachers. Plaintiff asserts that age was the 'but for' cause for the demotion.

[Doc. 51 at 91 in Case No. 3:07-cv-345, Plaintiff's Response to Defendants' Motion for Summary Judgment] [internal citations omitted]. Plaintiff has not provided evidence of the "trend of transferring or demoting older administrators."

The only evidence that plaintiff offers is a statement by former Superintendent Charles Lindsey. The comments by Superintendent Lindsey are not direct evidence of age discrimination because Superintendent Lindsey was not involved in plaintiff's demotion. As the Sixth Circuit has made clear, "[a]ny discriminatory statements *must come from decisionmakers* to constitute evidence of discrimination." Geiger, 579 F.3d at 620-21 (emphasis added). "Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." Id. at 621 (quoting Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir. 1998)). Because plaintiff has presented no evidence that Superintendent Lindsey was involved with plaintiff's demotion, his comments are irrelevant to plaintiff's ADEA claim. In sum, plaintiff has not presented any direct evidence of age discrimination.

### 3. Plaintiff Has Failed to Prove That There is a Genuine Issue of Material Fact Regarding Whether Age Was the "But For" Cause of Her Demotion

When a plaintiff relies upon circumstantial evidence to prove age discrimination, courts apply the test established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), *as modified by* Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981). *See* Geiger, 579 F.3d at 622. On a motion for summary judgment, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry." Macy v. Hopkins Co. Sch. Bd. of Educ., 484 F.3d 357, 364 (6th Cir. 2007) (citations omitted).

To establish a prima facie case of age discrimination based upon circumstantial evidence, plaintiff must establish "(1) that he was a member of a protected class; (2) that he was discharged; (3) that he was qualified for the position held; and (4) that he was replaced by someone outside of the protected class. Geiger, 579 F.3d at 622 (citations omitted).

If a plaintiff establishes a prima facie case of age discrimination, then the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for the adverse employment decision. Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410-11 (6th Cir. 2008). If the defendant provides a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. Id. At this point, plaintiff must show that the proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000). Ultimately, as the Supreme Court made clear in Gross, it is the plaintiff's burden to show that "age was the 'but for' cause of their employer's adverse action." 129 S.Ct. at 2351.

Assuming that plaintiff has established a prima facie case of age discrimination, defendants have proffered legitimate, nondiscriminatory reasons for plaintiff's demotion. Plaintiff has not presented sufficient evidence to support an inference that the Board's proffered reasons were a pretext for unlawful discrimination. Defendants argue that plaintiff was demoted for violating Board Policies CD ("Lines of Authority") and GAE ("Complaints and Grievances"). As Superintendent Mullins stated, plaintiff violated these policies because:

> . . . there was not a cooperative supervisory relationship, because the employees expressed concerns about being able to go to ask Mary questions, about being able to go to Mary, and they felt like if they did and tried to create a cooperate relationship and question anything, they were intimidated. They were bullied. They felt like they couldn't establish a cooperative relationship for fear of retaliation, verbal or whatever.

[Doc. 41 at 20 in Case No. 3:07-cv-345, Defendants' Memorandum in Support of their Motion for Summary Judgment, excerpt from Superintendent Mullins's Deposition]. Defendants have proffered a legitimate, non-discriminatory reason- inadequate job performance- for plaintiff's demotion.

Plaintiff has failed to show that there is a genuine issue of material fact regarding whether the proffered reason was pretextual. Again, plaintiff relies upon the following in support of her claim:

> Plaintiff Carroll was 60 years old at the time she was demoted she was within the protected age class. The Defendant Knox County Board of Education has had a trend of transferring or demoting older administrators. Former Superintendent Charles Lindsey commented at a meeting that it was good to see so many young teachers. Plaintiff asserts that age was the 'but for' cause for the demotion.

[Doc. 51 at 91 in Case No. 3:07-cv-345, Plaintiff's Memorandum in Response to the Motion for Summary Judgment] [internal citations omitted]. Plaintiff has not provided evidence of a "trend of transferring or demoting older administrators." [Id.]. Furthermore, as the Court previously explained, Superintendent Lindsey's comments are irrelevant because Superintendent Lindsey was not involved with plaintiff's demotion. *See* Geiger, 579 F.3d at 620-21 (recognizing that "[a]ny discriminatory statements *must come from decisionmakers* to constitute evidence of discrimination.") (emphasis added).

In her Response to Defendants' Motion for Summary Judgment, plaintiff "asserts that age was the 'but for' cause for the demotion." [Doc. 51 at 91 in Case No. 3:07-cv-345.] At this stage in the proceedings, an "assertion" is not good enough to survive a motion for summary judgment. *See* Celotex, 477 U.S. at 324 (holding that a non-moving party demonstrates the existence of genuine issues of material fact by "*going beyond the pleadings* and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file . . .") (emphasis added). Plaintiff relies upon unsupported statements, seemingly treating the motion for summary judgment as a motion to dismiss. At this stage, it is plaintiff's burden to show that there is a genuine issue of material fact regarding whether age was the "but for" cause of her demotion. *See* Gross 129 S.Ct.

at 235. The overwhelming evidence suggests that plaintiff was demoted for inadequate job performance, not because of her age. [*See* Part I., discussing Human Resources' interviews with employees under plaintiff's direct supervision]. Thus, plaintiff has failed to show that there is a genuine issue of material fact regarding whether age was the "but for" cause in her demotion. Id. Accordingly, defendants' Motion for Summary Judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73,] is **GRANTED**, to the extent that plaintiff's ADEA claim is **DISMISSED WITH PREJUDICE**.

### C. Plaintiff's Claims Under the Americans With Disabilities Act

#### 1. Plaintiff's ADA Claims Against Superintendent Mullins in His Personal Capacity Are Dismissed Because He Is Not A "Covered Entity"

Plaintiff has brought two claims under the Americans With Disabilities Act ("ADA"), 42 U.S. § 12101 *et seq*. First, plaintiff alleges that her demotion - the adverse employment decision- was based upon unlawful discrimination. Second, plaintiff alleges that the Board failed to make reasonable accommodations for her disability. Under both theories, she claims that she was discriminated against on the basis of her rheumatoid arthritis and scoliosis. [Doc. 1 at 13-14 in Case No. 3:08-cv-73].

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Covered entities" includes "public entities," which is defined as "any State or local government." 42 U.S.C. § 12131(1)(A). *See* Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) ("Under Title II of the ADA, which forbids discrimination by 'any public entity,' 42 U.S.C. § 12131, the proper defendant

is that 'entity.'").

The ADA does not permit public employees or supervisors to be sued in their personal capacity. *See* Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 n.1 (6th Cir. 1999). *See also* Walker, 213 F.3d at 346 ("The director and all of the other defendants must have been sued in their official capacities- that is, as proxies for the state- rather than their individual capacities, because the ADA addresses its rule to employers, places of public accommodation, and other organization, not to the employees or managers of these organizations.") (internal citations omitted). Accordingly, plaintiff's ADA claims against Superintendent Mullins in his personal capacity are **DISMISSED WITH PREJUDICE**. The Court now determines whether the Board may be held liable.

### 2. Claim 1: Demotion Was Based Upon Unlawful Discrimination

#### a. Introduction

To establish a prima facie case of discrimination, plaintiff must show that there is a genuine issue of material fact regarding each of the following elements: "(1) [that] she was 'disabled' under the ADA; (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of the plaintiff's disability; and (4) a nondisabled person replaced her." Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 553 (6th Cir. 2008). Courts apply the McDonnell Douglas framework after a plaintiff has established a prima facie case. Id. At that point, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." Id. On a motion for summary judgment, courts consider "whether there

is sufficient evidence to create a genuine dispute at each stage of the <u>McDonnell Douglas</u> inquiry."
<u>Id.</u> at 554.

> **b.** **Plaintiff Failed to Establish a Prima Facie Case Because She Has Not Shown That There is a Genuine Issue of Material Fact Regarding Whether She Was "Disabled"**

To establish a prima facie case of discrimination, plaintiff must first show that she is "a disabled person within the meaning of the Act." <u>Sullivan v. River Valley Sch. Dist.</u>, 197 F.3d 804, 810 (6th Cir. 1999). Under the ADA, "disability" is defined as:

> (A)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B)  a record of such an impairment; or
>
> (C)  being regarded as having such an impairment.

42 U.S.C. § 12102(2) (2006).[14]  In other words, plaintiff must show that she had an impairment that substantially limited her major life activities, or that she was perceived as having such an impairment.  <u>Id.</u>  In this case, plaintiff does not argue that she was "regarded" as having an impairment under § 12102(2)(C).  Thus, the Court must determine whether plaintiff has shown that there is a genuine issue of material fact regarding whether she had a "physical or mental impairment that substantially limit[ed] one or more of the major life activities of such individual."  <u>Id.</u> at § 12102(2)(A).

Plaintiff has not defined what "major life activity" was substantially limited by her arthritis

---

[14]  The Court notes that the ADA was modified by the Americans With Disabilities Act Amendment Act ("ADAAA") in 2008.  The ADAAA broadened the definition of disability in § 12102. However, the Sixth Circuit has held that "the ADA Amendments Act does not apply to pre-amendment conduct."  <u>Milholland v. Sumner County Bd. of Educ.</u>, 569 F.3d 562, 567 (6th Cir. 2009).  Plaintiff's ADA claim is based upon events that occurred prior to the passage of the ADAAA.  Thus, the Court will not use the definition of "disability" as found in the ADAAA.

and scoliosis. However, assuming that the "major life activity" was "work [15]," the statutory phrase "'substantially limits' requires, at a minimum, that plaintiffs allege they are *unable to work in a broad class of jobs*." Sutton v. United Air Lines, 527 U.S. 471, 491 (1999) (emphasis added), *superseded by statute on unrelated grounds*. In other words, the condition must be viewed as "significantly restrict[ing] [the plaintiff's] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Wysong v. Dow Chemical Co., 503 F.3d 441, 452 (6th Cir. 2007) (citing 29 C.F.R. § 1630.2(j)(3)(I)). The Supreme Court has held that the "inability to perform a single, particular job does not constitute a limitation on [a plaintiff's] life activity of working." Sutton, 527 U.S. at 492.

Plaintiff relies upon the fact that her "rheumatologist stated in her deposition that Plaintiff suffers from both rheumatoid arthritis as well as scoliosis." [Doc. 51 at 76 in Case No. 3:07-cv-345]. However, plaintiff has not shown that there is a genuine issue of material fact regarding whether her arthritis substantially limited her from performing a broad class of jobs. In fact, plaintiff admits that her "disability does not and has not affected her job performance in any way." [Doc. 1 in Case No. 3:08-cv-73, Plaintiff's Complaint]. Plaintiff further states that her disability "in no way prevented or prevents the Plaintiff from performing the duties required by her employment nor did or does Plaintiff's disability impair the performance of Plaintiff's work. [Id. at 14-15]. Plaintiff's own admissions make clear that her physical impairments did not substantially limit her from performing a broad class of jobs, and therefore was not "disabled" within the meaning of the ADA.

The facts of the case are similar to Milholland v. Sumner County Board of Education, 569

---

[15] According to ADA regulations, a major life activity includes "functions such as caring for oneself, performing manual tasks, walking, seeing hearing, speaking, breathing, learning, and *working*." 29 C.F.R. § 1630.2(I) (emphasis added).

F.3d 562 (6th Cir. 2009).  In Milholland, a former teacher filed an ADA claim against a school board after she was demoted from an administrative position.  Id. at 564.  Like the present case, the plaintiff in Milholland suffered from arthritis and alleged that she was "disabled" within the meaning of the ADA.  Id.  The plaintiff alleged that she was demoted from her administrative position due to her "disability."  Id.

The district court dismissed the ADA claim, finding that the plaintiff did not have a "disability."  As mentioned previously, there are various ways of showing that one has a "disability."  Plaintiffs may show that they had a "physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2)(A).  Or, plaintiffs may show that they were "regarded" as having such impairment- that is, they did not in fact have such impairment, but their employer regarded them as being impaired.  42 U.S.C. § 12102(2)(C).  The plaintiff in Milholland did not claim that her arthritis was itself a disability.  Id. at 567.  Rather, the plaintiff asserted that she was "disabled" because she was "regarded" as having an impairment under 42 U.S.C. § 12102(2)(C).

The Sixth Circuit affirmed the district court's dismissal, finding that the employer did not regard the plaintiff as having an "impairment that substantially limits" her major life activity of "working."  Id. (citing Sutton, 527 U.S. at 491).  Notably, even though the plaintiff was demoted from her administrative position, she continued to serve as a teacher.  Milholland, 569 F.3d at 568.  As the court explained, the plaintiff "was not precluded from working in a broad class of jobs simply because . . . [she was not given the] administrator job she desires.  Even if Milholland [the plaintiff] was regarded as having an impairment that limited working as an administrator, 'the inability to perform a single, particular job does not constitute a substantial limitation' on her life activity of

working." Id. (internal citations omitted). Notably, the Sixth Circuit found that because teachers are "in the same class of jobs as an administrator," the plaintiff was not precluded from working in a broad class of jobs. Id. "Administrators and teachers are both educators with 'similar training, knowledge, skills or abilities' and thus are in the same class under 29 C.F.R. § 1630.2(j)(3)(ii)(B). Although being an administrator may require additional training and certifications, and require more organizational skill, these distinctions do not take the position out of the 'broad class' of jobs that envelops all educators." Id. (internal citations omitted).

Like the plaintiff in Milholland, Mary Carroll was demoted from an administrative position, but continued to serve as a "teacher." [See Part III.A(2)(a) at 16-17]. In Milholland, the Sixth Circuit made clear that because administrators and teachers are in the same class of jobs, and because the plaintiff in Milholland served as a teacher after being demoted from an administrative position, the plaintiff was not "disabled" within the meaning of the ADA. Milholland, 569 F.3d at 568. The facts of the present case are nearly identical. Plaintiff was demoted from an administrative position (Supervisor of Psychological Services), but continued to serve as a teacher. While plaintiff may have suffered from arthritis and scoliosis, she has not explained how these ailments substantially impaired her from performing a broad class of jobs. In fact, plaintiff admits that her physical impairments did not affect her job performance. [See Doc. 1 at 14-15 in Case No. 3:08-cv-73, Plaintiff's Complaint].

To raise an issue of fact as to whether a claimed impairment substantially limits a major life activity, "a plaintiff must present more than mere conclusory allegations. Rather, a plaintiff must provide specific information detailing the nature and length of the limitation, together with supporting medical evidence regarding the duration and severity of the impairment's impact on the

major life activity at issue." <u>Ragusa v. Malverne Union Free Sch. Dist.</u>, 582 F.Supp. 2d 326, 342 (E.D.N.Y. 2008). Plaintiff has not provided information regarding the nature and length of her impairments, the severity, or how it precluded her from working in a broad class of jobs.

Plaintiff relies upon the testimony of Dr. Donna M. Winn. [Doc. 52-22 in Case No. 3:07-cv-345] to show that she was "disabled." However, there is nothing in that testimony that indicates plaintiff was unable to work as a school psychologist after being demoted from her supervisory position. The fact that plaintiff continued to serve as a teacher- which is in the same class of jobs as school administrative positions- undermines her argument. *See* <u>Milholland</u>, 569 F.3d at 568. The fact that plaintiff continued to serve as a teacher demonstrates that she was not precluded from a "broad class of jobs," and therefore was not substantially limited in the life activity of "working." Accordingly, the Court finds that plaintiff has not shown that there is a genuine issue of material fact regarding whether she was "disabled" within the meaning of 42 U.S.C. § 12102(2)(A)

### c. Even if Plaintiff Established a Prima Facie Case of Discrimination, Her Claim Would Still Fail

Assuming, *arguendo*, that plaintiff established a prima facie case of discrimination, her claim would still fail. Once a prima facie case has been established, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." <u>Nance v. Goodyear Tire & Rubber Co.</u>, 527 F.3d 539, 553 (6th Cir. 2008). On a motion for summary judgment, the court considers "whether there is sufficient evidence to create a genuine dispute at each stage of the <u>McDonnell Douglas</u> inquiry." <u>Id.</u> at 554.

Defendants have proffered legitimate, non-discriminatory reasons for plaintiff's demotion.

During the spring of 2007, the Human Resources Department conducted an investigation. [*See* Doc. 41 at 8-13 in Case No. 3:07-cv-345, Defendants' Memorandum in Support of their Motion for Summary Judgment]. As part of the investigation, over thirty employees under plaintiff's direct supervision were interviewed. [Id.]. Many of the comments were negative. [Id.]. For example, some employees complained that they were intimidated and even scared of plaintiff. [Id.]. Superintendent Mullins states that plaintiff was removed as Supervisor of Psychological Services for the following reasons:

> . . . the greatest majority of Mary's department felt like that they were being intimidated. They were being harassed. They didn't feel like they could go to Mary and share information, share concerns, disagree with Mary in any way for fear that there would be retaliation. So obviously, you are back again to your role of responsibility for personnel that are serving kids in Knox County schools. I have always grown up with the idea . . . anybody's that's got issues can come. If they disagree with me, that's fine. Let's talk about it. If people feel comfortable in their role and responsibility, they are going to do a better job of serving the kids in Knox County. If they don't feel comfortable and obviously if they feel like they cannot bring issues to the person who has responsibility for them, then I'm not sure we're doing the best job for the kids of Knox County.

[Doc. 41 at 51 in Case No. 3:07-cv-345, Defendants' Memorandum in Support of their Motion for Summary Judgment, excerpt from Superintendent Mullins's deposition testimony].

Defendants have proffered a legitimate, non-discriminatory reason for plaintiff's demotion, and plaintiff has failed to show that there is a genuine issue of material fact regarding whether the proffered reason was pretextual. It is plaintiff's burden to establish that there is a genuine issue of material fact regarding whether the employer's proffered reason was pretextual. Kocsis v. Multicare Management, Inc., 97 F.3d 876, 884, 882 (6th Cir. 1996) To raise a genuine issue of material fact "on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact;

(2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." Id. at 883 (citations omitted).

First, plaintiff has not shown that the demotion had no basis in fact. As part of the Human Resources investigation, employees under plaintiff's direct supervision were interviewed. Many of the employees made negative comments about plaintiff. One employee stated that she hoped plaintiff would not return. [Doc. 51 at 20 in Case No. 3:07-cv-345, Plaintiff's Response to Defendants' Motion for Summary Judgment]. Another employee stated, "She is a controller. She micro-manages everyone. I have not had a direct confrontation but I have seen others in tears. The stress level in the dept is why I left Knoxville, and moved to Cherokee." [Id.] Another employee commented, "We operate in general in a hostile environment. 2 years ago [s]he scheduled training pre-contracts. We were to get comp time, I could not attend all the training. She was hostile to me about missing those days. But I have done favors for her so she did not retaliate." [Id.]. Others characterized plaintiff as "rude and disrespectful." [Id.]. Another employee stated, "There is an atmosphere of fear for all of us. . . . Everyone is afraid of her." [Id. at 21.]. These comments were summarized and presented to Superintendent Mullins, who then met with plaintiff on at least two occasions before she was demoted.

Plaintiff argues that the Board's reason was pretextual because some employees had a positive impression of plaintiff:

> Defendants did not interview all of Mary's department. The special education teachers which Plaintiff supervised, principals and an assistant principal, an educational diagnostician which Plaintiff supervised and former secretaries were deposed and they stated the contrary regarding Plaintiff: They stated they had a good relationship with Plaintiff, very positive relationship, Plaintiff was accessible to them, Plaintiff had good communication with them, they stated they did feel embarassed or intimidated to ask Plaintiff questions . . .

[Doc. 51 at 83 in Case No. 3:07-cv-345, Plaintiff's Response to Defendants' Motion for Summary Judgment,]. The fact that some employees had a positive impression of plaintiff does not prove that her demotion had "no basis in fact." The evidence clearly shows that defendants had a basis in fact for demoting plaintiff: many of the employees under plaintiff's direct supervision were intimidated and scared of her. Again, the standard is "basis in fact"- the employer does not have to show that the decision to demote plaintiff was supported by all the evidence, or even the majority of it.

Second, plaintiff has not shown that the "proffered reason did not actually motivate the action." Kocsis, 97 F.3d at 883. The decision to demote plaintiff was reached after months of interviewing employees under plaintiff's direct supervision. Superintendent Mullins and other school administrators met with plaintiff multiple times during this process. Plaintiff was afforded the opportunity to defend herself, but declined to do so. Plaintiff alleges that during the meeting on March 1, 2007, school administrators (including Dr. Sims, Dr. Wright, and Superintendent Mullins) stared at plaintiff's arthritic hands. Even if that happened, that is not enough to raise a genuine issue of material fact regarding the defendants' motivation for demoting plaintiff. It may have been insensitive for school administrators to stare at plaintiff's hands, but that does not show discriminatory intent in plaintiff's demotion.

Third, plaintiff has not shown that the proffered reason was "insufficient to motivate the action." Kocsis, 97 F.3d at 883. Again, the decision to demote plaintiff was made after months of interviewing employees under plaintiff's direct supervision. Many of the employees made negative comments about plaintiff. Plaintiff met with school administrators on multiple occasions to discuss the investigation and was provided with opportunities to defend herself. Plaintiff has not shown that there is genuine issue of material fact regarding whether plaintiff's job performance (defendants'

proffered reason for plaintiff's demotion) was "insufficient to motivate the action." Accordingly, defendants' Motion for Summary Judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73,] is **GRANTED**, to the extent that plaintiff's ADA claim based upon an unlawful demotion is **DISMISSED WITH PREJUDICE**.

### 3. Claim 2: Failure to Provide Reasonable Accommodations

#### a. Plaintiff's Claim Fails Because She Has Not Shown That There is a Genuine Issue of Material Fact Regarding Whether She Was "Disabled"

In addition to arguing that she was unlawfully demoted, plaintiff argues that the Board violated the ADA by failing to provide her with reasonable accommodations. As the Sixth Circuit has stated, the failure "to make a reasonable accommodation [for the plaintiff's disability] falls within the ADA's definition of 'discrimination.'" Kleiber v. Honda of America Mfg., Inc., 485 F.3d 862, 868 (6th Cir. 2007). Because these claims are based upon direct evidence of discrimination, courts do not apply the McDonnell Douglas framework. Id. at 869. Rather, courts apply the following framework:

(1) The plaintiff bears the burden of establishing that he or she is disabled.

(2) The plaintiff bears the burden of establishing that he or she is 'otherwise qualified' for the position despite his or her disability;

  (a) without accommodation from the employer;

  (b) with an alleged 'essential' job requirement eliminated; or

  (c) with a proposed reasonable accommodation.

(3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

Kleiber, 485 F.3d at 869 (quoting Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir.

40

2004), *cert. denied*, 543 U.S. 817 (2004)).

Like the unlawful demotion claim, plaintiff must show that she was "disabled" within the meaning of the ADA at the time of the allegedly discriminatory act. Because the Court finds that plaintiff has not demonstrated that there is a genuine issue of material fact regarding whether she was "disabled,"[16] defendants' Motion for Summary Judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73,] is **GRANTED**, to the extent that plaintiff's ADA claim based upon a lack of "reasonable accommodations" is **DISMISSED WITH PREJUDICE**.

### D.    Plaintiff's Discrimination Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, plaintiff must demonstrate "(1) that [the] defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under federal law." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). In this case, plaintiff alleges that her rights under the Equal Protection Clause of the Fourteenth Amendment were violated. In particular, plaintiff alleges that she was demoted due to her physical impairments and age. [Doc. 1 at 18-19 in Case No. 3:08-cv-73, Plaintiff's Complaint]. As an initial matter, the Court notes that plaintiff has sued a local government unit (the Board), and a local government official (Superintendent Mullins) in his official and personal capacity. *See* Part III.A(1) (discussing the status of the defendants for purposes of § 1983 liability). Like the § 1983 claims based upon procedural due process violations, the Court does not have to decide whether Superintendent Mullins is protected by the qualified-immunity defense. Plaintiff's § 1983 claims based upon equal protection violations are dismissed for completely independent reasons.

To prevail on a § 1983 claim based upon an equal protection violation, plaintiff must prove

---

[16]  *See* Part III.C(2)(b).

that the employer "made an adverse employment decision 'with a discriminatory intent or purpose.'" Peace v. Wellington, 211 Fed.Appx. 352, at *5 (6th Cir. Oct. 23, 2006) (quoting Charles v. Baesler, 910 F.2d 1349, 1356-57 (6th Cir. 1990)). To prove that the employer purposefully discriminated, plaintiff must prevail under McDonnell Douglas. *See* Watson v. Cleveland, 202 Fed.Appx. 844, at *9 (6th Cir. Sept. 8, 2006) (holding that an "equal protection claim brought under § 1983 requires the plaintiff to make the same showing required to prove a violation of Title VII," and recognizing that courts apply the McDonnell Douglas framework in the Title VII context). *See also* Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir. 1988) (explaining that "Title VII mirrors that which must be made to recover on an equal protection claim under section 1983.") (citations omitted). To survive a motion for summary judgment, plaintiff must show that there is a genuine issue of material fact at each stage of the McDonnell Douglas inquiry. *See* Id.

To establish a prima facie case of discriminatory demotion, plaintiff must show: (1) that the plaintiff was a member of a protected class; (2) the plaintiff was subject to an adverse employment action; (3) the plaintiff was qualified for the job; and (4) the plaintiff was replaced by a person outside the class. *See* Mitchell v. Toledo Hosp., 964 F.3d 577, 582 (6th Cir. 19992) (adapting McDonnell Douglas to a discharge/demotion situation [17]). Courts are divided as to whether a plaintiff may bring age and disability discrimination claims under § 1983, especially when the plaintiff brought concurrent ADA and ADEA claims.

---

[17] In Mitchell v. Toledo Hospital, the Sixth Circuit held that the McDonnell Douglas framework should be used to analyze discrimination claims brought under Title VII, ADEA, and 42 U.S.C. § 1981. The court did not expressly state in Mitchell whether McDonnell Douglas should be applied in discrimination claims brought under 42 U.S.C. § 1983. However, the court in Gutzwiller v. Fenik made clear that courts are to apply the McDonnell Douglas framework to analyze employment discrimination claims brought under § 1983 and based upon violations of the Equal Protection Clause. 860 F.2d 1317, 1325 (6th Cir. 1988). "Title VII mirrors that which must be made to recover on an equal protection claim under section 1983." Id.

As the Supreme Court has stated, persons with physical or mental disabilities are not part of a suspect class under the Equal Protection Clause. *See* <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 442-47 (rejecting contention that mental retardation is a quasi-suspect classification calling for heightened judicial scrutiny); *see also* <u>Lussier v. Dugger</u>, 904 F.3d 661, 671 (11th Cir. 1990) (applying rational basis standard to state action concerning persons suffering from disabilities such as hepatitis). Courts are divided as to whether the ADA preempts disability discrimination claim brought under § 1983. Three courts of appeal have held that the ADA preempts § 1983 actions based upon ADA violations, but not necessarily equal protection violations. *See* <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1011 (8th Cir. 1999); <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002); <u>Holbrook v. City of Alpharetta</u>, 112 F.3d 1522, 1531 (11th Cir. 1997). In contrast, other courts have held that the ADA does not provide the exclusive remedy. *See* <u>Estate of Yates v. Beck</u>, 2003 WL 22231260, at *4 (W.D.N.C. 2003) (holding that a disability discrimination claim brought under the Equal Protection Clause pursuant to § 1983 is not preempted by the ADA); <u>Pathways Psychosocial v. Town of Leonardtown</u>, 223 F.Supp.2d 699, 709 (D.Md. 2002) (holding the same); <u>Cisneros v. Colorado</u>, 2005 WL 1719755, at *10 (D.Colo. 2005) (holding that the ADA does not preempt disability discrimination claims brought pursuant to Section 1983, so long as those claims are based upon equal protection violations and not violations of the ADA). In the Sixth Circuit, it remains unclear as to whether a plaintiff may bring concurrent disability discrimination claims under § 1983 and the ADA, and if so, under what circumstances.

As for plaintiff's age-based discrimination claim, the Supreme Court has held that "age is not a suspect classification under the Equal Protection Clause." *See* <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 83 (2000) (stating that age classifications, "unlike governmental conduct based on race or gender, cannot be characterized as 'so seldom relevant to the achievement of any legitimate state

interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy.")
(quoting Cleburne, 473 U.S. at 440).  As the Supreme Court has stated, "[o]lder persons, again,
unlike those who suffer discrimination on the basis of race or gender, have not been subjected to a
'history of purposeful unequal treatment.'" Kimel, 528 U.S. at 83 (citations omitted).  Some courts
of appeal have held that age discrimination claims are preempted by the ADEA.  See Lafleur v.
Texas Dep't of Health, 126 F.3d 758, 760 (5th Cir. 1997) (per curiam) ("[B]ecause Congress has
enacted a statutory provision to confront age discrimination in the work place via the ADEA, and
based on this circuit's opinion that the ADEA is the sole remedy for persons who have been
discriminated against based on their age, we are compelled to hold that where a plaintiff asserts a
claim of age discrimination under § 1983 and where the facts alleged will not independently support
a § 1983 claim, the plaintiff's age discrimination claim is preempted by the ADEA."); Zombro v.
Baltimore City Police Dep't, 868 F.2d 1364, 1369 (4th Cir. 1989) (declining to recognize an age
discrimination claim under Section 1983 as "[t]he conclusion is irresistible that the ADEA provides
the exclusive judicial remedy for claims of age discrimination"); Migneault v. Peck, 204 F.3d 1003,
1005 n.1 (10th Cir. 2000) (holding that ADEA preempts age discrimination claims brought under
§ 1983).  The Sixth Circuit has not addressed this issue in a published opinion.

Assuming that plaintiff's § 1983 claims are not preempted by the ADA and ADEA, her claim
still fails because defendants have proffered legitimate, non-discriminatory reasons for demoting
plaintiff, and plaintiff has failed to show that there is a genuine issue of material fact regarding
whether the reasons were pretextual.  The Court will not repeat its McDonnell Douglas analysis
because it has already applied that test as it relates to plaintiff's age (in the ADEA context) and
physical impairments (in the ADA context)- both of which are the basis for her discrimination
claims under Section 1983.  [See Parts III.B(3) and III.C(2)(b)].  The following case demonstrates

why this analysis is unnecessary.

In Watson v. City of Cleveland, the plaintiff filed employment discrimination claims under Title VII and Section 1983. 202 Fed.Appx. 844, 856 (6th Cir. Sept. 8, 2006). The Sixth Circuit affirmed the district court's dismissal of plaintiff's Title VII claim (which was based upon alleged racial discrimination) after applying the McDonnell Douglas framework. Id. When it reached plaintiff's § 1983 claim, which was also based upon alleged racial discrimination (or more precisely, an equal protection violation), the Sixth Circuit did not apply McDonnell Douglas: "She [the plaintiff] can no better make the evidentiary showings required for McDonnell Douglas for the purposes of this claim than she could for her Title VII claim." Id. The Sixth Circuit did not apply McDonnell Douglas to the § 1983 claim because it already applied that test to plaintiff's Title VII claim, and both claims were based upon the same type of discrimination.

Because plaintiff failed to satisfy McDonnell Douglas in the ADEA context (age) and the ADA context (physical impairments), plaintiff has failed to show that there is a genuine issue of material fact at each stage of the McDonnell Douglas test as it relates to plaintiff's § 1983 claim- which is based upon the same types of discrimination (age and physical impairments). Accordingly, defendants' Motion for Summary Judgment [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73,] is **GRANTED**, to the extent that plaintiff's § 1983 claims based upon unlawful discrimination is **DISMISSED WITH PREJUDICE**.

### E. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

In addition to her federal claims, plaintiff has brought several claims under Tennessee law. This includes discrimination claims under T.C.A. § 8-50-103 and § 4-21-102. Plaintiff also argues that her demotion was arbitrary and capricious in violation of T.C.A. § 49-5-510.

Under 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. In the Sixth Circuit, the policy is that "[i]f federal claims are dismissed before trial, the state claims generally should be dismissed as well." Brooks Rothe, 577 F.3d 701, 709 (6th Cir. 2009) (quoting Wojnicz v. Davis, 80 Fed.Appx. 382, 384-85 (6th Cir. 2003)).

The Court has original jurisdiction only over plaintiff's federal claims. Because the Court dismissed plaintiff's federal claims prior to trial, the Court declines to exercise supplemental jurisdiction over the state law claims. Accordingly, plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

## IV. CONCLUSION

In conclusion, the Court makes the following rulings:

- Defendants' Motion for Summary Judgment is **GRANTED**, whereby plaintiff's federal claims are **DISMISSED WITH PREJUDICE** and plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** [Doc. 36 in Case No. 3:07-cv-345, Doc. 20 in Case No. 3:08-cv-73];

- Plaintiff's Motion to Consider Affidavit is **DENIED AS MOOT**. Having dismissed this case in its entirety, this motion is moot. [Doc. 58 in Case No. 3:07-cv-345, Doc. 42 in Case No. 3:08-cv-73];

- Defendants' Motion to Strike is **DENIED AS MOOT**. Having dismissed this case in its entirety, this motion is moot. [Doc. 59 in Case No. 3:07-cv-345, Doc. 43 in Case No. 3:08-cv-73]; and

- Plaintiff's Motion in Limine is **DENIED AS MOOT**. Having dismissed this case in its entirety, this motion is moot. [Doc. 69 in Case No. 3:07-cv-345, Doc. 52 in Case No. 3:08-cv-73].

**IT IS SO ORDERED**.

ENTER:

_____s/ Thomas W. Phillips_____
United States District Judge